# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ROCKIES EXPRESS PIPELINE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-cv-3127 |
| | ) | |
| 77.620 acres more or less, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on the Plaintiff's Motion for Summary Judgment [d/e 466], and multiple Motions in Limine by both the Plaintiff [d/e 432, 435, 438, 441, and 454] and the Defendants [d/e 457, 459, 461, and 463].

Plaintiff's Motion for Summary Judgment is granted.

Plaintiff's Motions in Limine are allowed.

Defendants' Motions in Limine are denied as moot.

## I. BACKGROUND

Rockies Express Pipeline LLC ("REX"), a natural gas pipeline company, is constructing a pipeline through Missouri, Illinois, Indiana, and Ohio.  The Federal Energy Regulatory Commission (FERC) has granted REX a Certificate of Public Convenience and Necessity, pursuant to 15 U.S.C. § 717f(c).  As a certificate holder, REX may acquire rights-of-way and land by the exercise of the right of eminent domain, after attempting to obtain the rights-of-way and land via contract.  *See* 15 U.S.C. § 717f(h).

REX began this action on June 6, 2008, seeking the condemnation of a host of properties in Scott, Morgan, Sangamon, Macon, Moultrie, Douglas, and Edgar Counties.  *See* Verified Complaint for Condemnation of Pipeline Right-Of-Way against all Defendants [d/e 1]. The Court confirmed REX's condemnation a few months later.  *See* Opinion of August 15, 2008 [d/e 389].  Shortly after confirming the condemnation, the Court authorized immediate possession of the rights-of-way.  *See* Opinion of August 20, 2008 [d/e 400].

Following these two rulings, the only issue that remained in the suit

was the compensation for the landowners.  REX moved for the establishment of a commission to determine compensation, pursuant to Federal Rules of Civil Procedure 71.1(h).  However, the Court denied the motion because there were so few Defendants remaining at that time and the properties are not far from the courthouse.  *See* Opinion of January 6, 2009 [d/e 415].  Since that time, additional Defendants have dropped out of the case.

There are only five tracts remaining in the case, with three groups of Defendants.  Robert and Bettie Burtle own two tracts–40.69 acres and 20.24 acres–located in Sangamon County.  Richard Watts is the trustee of a trust that owns two tracts (38.04 acres and 80 acres), also located in Sangamon County.  Finally,  Dorothy Bruntjen holds a life estate in a 162.3 acre tract located in Moultrie County, and five family members have a remainder interest in the tract.

## II. APPLICABLE LAW AND STANDARDS

## A. Applicable Law

This case was brought under the Natural Gas Act, 15 U.S.C. § 717

*et seq.*

1. Procedural Law

The Natural Gas Act contains language stating that in carrying out the condemnation, the district court is to follow the practices and procedures of the states where the property is situated.  *See* 15 U.S.C. § 717f(h).

However, the majority of courts hold that the practices and procedure clause was superseded by a combination of the "supersession clause" of the Rules Enabling Act,[1] and the subsequent adoption of what is now Federal Rule of Civil Procedure 71.1 in 1951.  *See N. Border Pipeline Co. v. 64.111 Acres of Land in Will County, Ill.*, 344 F.3d 693, 694 (7th Cir. 2003); *S. Natural Gas Co. v. Land, Cullman County*, 197 F.3d 1368, 1372-75 (11th Cir. 1999) (citing *Kirby Forest Indus. v. United States*, 467 U.S. 1 (1984)); 13 James Wm. Moore et al., Moore's Federal Practice-Civil § 71.1.04[1] (2010) (hereinafter Moore's Federal Practice-Civil); *but see Portland Natural Gas Transmission Sys. v. 19.2*

---

[1] "All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."  28 U.S.C. § 2072(b).

*Acres of Land*, 195 F.Supp. 2d 314 (D. Mass. 2002).

2. Substantive Law

There is some debate regarding whether to apply state or federal substantive law to determine compensation in condemnation cases involving federal licensees.  Some courts have favored the application of federal substantive law, relying upon the federal common law of condemnation that has developed in cases related to condemnations by the federal government.  *See E. Tenn. Natural Gas Co. v. 7.74 Acres in Wythe County, Va.*, 228 Fed. Appx. 323, 327 (4th Cir. 2007) (applying "reasonably probable" change of land use test elaborated in a federal condemnation case – *United States v. 69.1 Acres of Land*, 942 F.2d 290, 292 (4th Cir. 1991)).

The opposing view is that state substantive law should apply in condemnations by FERC licensees.  *See Georgia Power Co. v. Sanders*, 617 F.2d 1112, 1115-24 (5th Cir. 1980) (en banc) (holding that state substantive law applies in condemnation proceeding brought under the Federal Power Act); *see also Fla. Gas Transmission Co. v. Approx. 9.854*

*Acre Natural Gas Transmission Pipeline Easement*, No. 96-14083-CIV, 2000 WL 33712490, at \*8-\*13 (S.D. Fla. March 21, 2000) (applying Florida substantive law).

Courts have generally interpreted *Georgia Power* as applying solely to cases where licensees of the federal government are carrying out condemnations pursuant to federal statutes, while holding that when the federal government is condemning land, the substantive law is federal common law.  *See Nat'l R.R. Passenger Corp. v. Two Parcels of Land*, 822 F.2d 1261, 1266-67 (2d Cir. 1987); *United States v. 33.5 Acres of Land*, 789 F.2d 1396, 1400 (9th Cir. 1986).  The Sixth Circuit endorsed *Georgia Power* in *Columbia Gas Transmission Corp. v. Exclusive Natural Gas Storage Easement*, 962 F.2d 1192, 1197-99 (6th Cir. 1992).[2]

The Court has been unable to locate any authority from the U.S. Court of Appeals for the Seventh Circuit definitively stating whether federal or state substantive law should apply.

---

[2] While the Court ultimately adopts the result outlined in *Columbia Gas* regarding the adoption of state substantive law, the Court does not adopt the Sixth Circuit's analysis of the practices and procedures clause of 15 U.S.C. § 717f(h).  *See Columbia Gas*, 962 F.2d at 1194-99.

District courts within the Seventh Circuit have diverged on this point. *Compare Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, No. 01 C 4696, 2002 WL 1160939, at *1 (N.D. Ill. May 30, 2002) (rejecting *Georgia Power* and *Columbia Gas*, and applying federal substantive law to determine compensation) *with Guardian Pipeline, L.L.C. v. 295.49 Acres of Land*, No. 08-C-0028, 2008 WL 4830138, at *1 (E.D. Wis. Oct. 28, 2008) (applying state substantive law to determine compensation).

The Court finds the arguments supporting the application of state law more persuasive. In general, property rights are defined by state law. Furthermore, the Court does not see an overriding need for national uniformity on *substantive* property law when dealing with a FERC licensee. The uniform procedure under Federal Rule of Civil Procedure 71.1 provides sufficient predictability.

In the case at bar, the Parties have assumed that state substantive law applies. The briefing relies upon state law, and applying federal law at this point would be manifestly unfair.

## B. Summary Judgment Standards

As mentioned above, Federal Rule of Civil Procedure 71.1(a) states that the "Federal Rules of Civil Procedure apply to condemnation actions except as otherwise provided in Rule 71.1." 13 Moore's Federal Practice-Civil § 71.1.04[1]. "Since Rule 71.1 has no provisions governing summary judgment or partial summary judgment, Rule 56 applies." *Id.* at § 71.1.04[2][f].

"Summary judgment is appropriate when the evidence submitted, viewed in the light most favorable to the non-moving party, shows 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (quoting Fed. R. Civ. P. 56(c) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

In order to survive summary judgment, there must be sufficient evidence that a reasonable jury could find for the nonmoving party. *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

"A motion for summary judgment requires the responding party to come forward with the evidence that it has – it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (internal quotation marks and citations omitted).  Although inferences are drawn in favor of the nonmoving party, inferences relying on speculation or conjecture are insufficient.  *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

## III. ANALYSIS

### A. Plaintiff's Motions in Limine

The Plaintiff has filed five Motions in Limine [d/e 432, 435, 438, 441, and 454].  One motion [d/e 454] relates to the exclusion of evidence regarding the value of a parcel of land owned by Dorothy Bruntjen.  The four remaining motions [d/e 432, 435, 438, and 441] pertain to the four separate tracts in Sangamon County, but all raise the same issue – barring the testimony of Doug Stallard, an expert retained by Mr. Watts and the Burtles.

### 1. Bruntjen Property (IL-MU-001.000)

### a. Defining the Subject Property

REX claims that the subject property is a 162.3 acre parcel.  The Defendants claim that the subject property is 240 acres–the 162.3 acre parcel, plus an adjacent 80 acre parcel.

Under Illinois law, adjoining tracts of land can be considered part of the subject property if the owner can show unity of use, contiguity, and unity of title.  *See Dep't of Transp. v. Chicago Title and Trust Co.*, 303 Ill. App. 3d 484, 495 (1st Dist. 1999).  Contiguity and unity of use are not contested,[3] but unity of title is.

As indicated above, Dorothy Bruntjen has a life estate in the 162.3 acres, with John Bruntjen, Michael Bruntjen, Gail (White) Bruntjen, Rise Shears, and Carol Reubner (Phillips) holding a remainder interest.  The 80 acre tract, however, is owned by Bruntjen Farms, Inc.  Dorothy Bruntjen does not have an interest in Bruntjen Farms, Inc., and neither does Rise Shears.  The other remaindermen are shareholders of Bruntjen Farms, Inc.  However, there are an additional four shareholders of

---

[3] The two tracts are adjacent and are farmed as one tract.

10

Bruntjen Farms, Inc., that have no interest in the 162.3 acre tract.

Citing to non-Illinois authorities, the Defendants argue that there is sufficient overlap between the two groups to justify a finding of unity of title.

However, under Illinois law, the parcels do not enjoy unity of title. In *Department of Conservation v. Franzen*, the Appellate Court of Illinois stated:

> [W]here there is *complete identity* between the holders of the beneficial interest in land trust property described in the condemnation petition and other property alleged to be damaged, the common ownership of the beneficial interest is sufficient to permit the filing of a petition for severance damages provided other requirements necessary to the filing of a cross-petition are met.

43 Ill. App. 3d 374, 381 (2d Dist. 1976) (emphasis added).

While there is overlap between the two parcels in the instant case, there is not "complete identity." There are some remaindermen who have no interest in Bruntjen Farms, and there are Bruntjen Farms shareholders who do not have a remainder interest in the 162.3 acres tract. Therefore, there is no unity of title. Consequently, the subject property is the 162.3 acre tract (identified as IL-MU-001.000), and does

not include the approximately 80 acre tract owned by Bruntjen Farms, Inc.

### b. Pipeline Report

Through interrogatories, the Defendants have indicated that Michael and John Bruntjen plan to testify as to valuation. The Defendants have indicated that Michael and John Bruntjen will testify regarding the valuation of the land, and include in their testimony information derived from a report prepared for the Gas Research Institute. The report was prepared by Mark J. Stephens of C-FER Technologies, of Edmonton, Alberta, Canada.

The report, published in October 2000, develops an approach to assessing the area that would be impacted by a worst-case ignited rupture of a natural gas pipeline. *See* Stephens Report [d/e 455-5], ii.

Mr. Stephens has not been disclosed as an expert in this case. The report was not prepared for the purposes of this litigation. The report contains complex formulas that laypersons would not be able to easily understand. Only an expert would be able to testify as to the reliability

of the report, or its possible application to the case at hand.  Therefore, there is no foundation for admitting the report.  The Defendants are attempting to offer the contents of the report for the truth of the matter asserted.  *See* Fed. R. Evid. 801.  Therefore the report is barred because it is without foundation and it is hearsay.  *See* Fed. R. Evid. 802.

John Bruntjen testified at his deposition that his attorney provided him with the information from the study.  Neither Michael nor John Bruntjen is aware of the reliability of the study.  Neither is an expert in studying high consequence areas related to natural gas pipelines.  *See* Fed. R. Evid. 701.  Therefore, Michael Bruntjen and John Bruntjen are barred from referencing the study or any information contained therein. *See id.*

Finally, the Court finds REX's arguments regarding prejudice persuasive.  Evidence of fire and explosions could be used to confuse the jury.  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403.

Under Illinois law, testimony about the likelihood of fire and explosions from underground pipelines is irrelevant when the condemned land is used solely for agriculture. *See Trunkline Gas Co. v. O'Bryan*, 21 Ill. 2d 95, 102 (1960). The whole of the 162.3 acre tract is used for agricultural purposes, and there are no buildings on the land.

Therefore, the report authored by Mark J. Stephens is barred.

### c. Comparable Tracts of Land

#### i. Sales Mentioned in Interrogatories

The Defendants referenced in the interrogatories two land sales as possible "comparables." The Parties agree that the Sangamon County sale ($8,042 per acre) is without foundation, and therefore reference to that sale is barred.

The Parties contest the admissibility of information from the second land sale referenced. Regarding that sale, the Defendants have stated the following: "Mike Bruntjen purchased one tract of land in Section 1 of Illini Township, Macon County, for $7,975 per acre." Defendants Bruntjens' Answers to Interrogatories [d/e 455-3], 3. REX

14

makes the following argument:

> Defendants claim that Michael Bruntjen purchased a tract of land in
> Macon County at some time for $7,975 per acre.  There is no disclosure
> of when that sale took place or how many acres were sold.  Michael
> Bruntjen in his deposition was unable to recall the details of the sale,
> including the date, acreage, etc.

REX Motion in Limine [d/e 455], 12.  In response, the Defendants state:

> [T]he Mike Bruntjen sale in Macon County is certainly comparable.  It
> consisted of 640 acres of farmland near Warrensburg – about as far
> northwest of Decatur as the subject farm is east.  The Plaintiff is free to
> cross examine the witness as to the factors which may affect how
> comparable the farms are, but it is not appropriate at this stage to bar
> evidence of that sale as comparable to the subject farm[.]

Bruntjen's Response [d/e 456], 6.

Under Illinois law, the Court must decide whether land sales are

sufficiently comparable as a threshold matter of admissibility.  If a land

sale is sufficiently similar with respect to "locality, character, time,

proximity, market conditions, improvements, and modes of payment,"

then evidence of the sale can be admitted.  *Dep't of Trans. v. Central*

*Stone Co.*, 200 Ill. App. 3d 841, 845 (4th Dist. 1990).

Under Illinois law, the decision whether to allow evidence of a sale

at a trial is a threshold determination that is the responsibility of the

Court.  *See Lake County Forest Pres. Dist. v. O'Malley*, 96 Ill. App. 3d

15

1084, 1087-88 (2d Dist. 1981).  The Defendants have provided

insufficient information to determine whether the tracts of land are in

fact comparable.  Therefore, information regarding the Michael Bruntjen

sale in Macon County is barred.

ii. Confidential Settlement Agreements

The Defendants have put forward five "sales" that are actually

Confidential Settlement Agreements entered into between REX and other

named defendants in this matter.  The Defendants have argued that the

use of these Confidential Settlement Agreements is the "most appropriate

method" of determining value.

The Confidential Settlement Agreements are inadmissible.  *See*

*United States v. 10.48 Acres of Land*, 621 F.2d 338, 339 (9th Cir.

1980); Fed. R. Evid. 408.

Under Illinois law, evidence of settlement offers is not admissible in

condemnation cases.  *See Dep't of Public Works and Bldgs. v. Sun Oil*

*Co.*, 66 Ill. App. 3d 64, 66-67 (5th Dist. 1978).  Furthermore, evidence

of settlements made with neighbors is inadmissable.  *See Ill. State Toll*

*Highway Auth. v. Heritage Standard Bank and Trust Co.*, 196 Ill. App. 3d 5, 21-22 (2d Dist. 1990).

In addition, the agreements are of limited reliability.  They represent the settlement of a lawsuit over just compensation for the taking of land.  Therefore, the dollar amount of the settlement encompasses more than just land value; it includes projected costs of litigation and the inconvenience of being involved in a lawsuit.

Information regarding settlement with REX is barred, including any information from Confidential Settlement Agreements related to this litigation.

### iii. Offers of Listing Prices by Real Estate Agents

An offer to list a tract of land is not a comparable sale.  The Defendants have not contested this issue.  Therefore, offers by real estate agents to list tracts of land are barred.

### d. Value of the Easement – Value of the Fee Interest

The Defendants argue that the value of the easement exceeds the value of the fee interest in the property.  An easement represents less

17

than a fee interest, and therefore is worth less than the fee interest. Any reference to this assertion is barred.

### e. Defendants' Evaluation of Easement and Remainder Value

The Plaintiff asserts that the Defendants' claim that the value of the easements exceed the value of the fee is the Defendants' only opinion as to value. (As explained above, this argument is barred.) The Defendants have rebutted the allegation that this is their only evidence as to the value of the easement.

The Plaintiff alleges that the Defendants' method of determining damage to the remainder is derived from Confidential Settlement Agreements. Furthermore, the Plaintiff alleges that the Defendants' methodology does not conform to the before and after fair market valuation method. The Defendants have not disputed this allegation.

Therefore, the defendants are barred from introducing any evidence of damage to the easement or the remainder.

### f. Highest and Best Use

The Parties agree that the highest and best use of the parcel is

agricultural.  Therefore, any reference to any other use of the parcel is barred.

### 2. Testimony of Doug Stallard – Sangamon County Tracts (IL-SA-136.004, IL-SA-202.001, IL-SA-202.002, and IL-SA-203.001)

As indicated above, the Plaintiff filed four Motions in Limine [d/e 432, 435, 438, and 441] seeking to bar the valuation expert of the Watts and Burtle Defendants – Doug Stallard, and his opinions and Reports.

The Federal Rules of Evidence provide that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  This rule is essentially the codification of the decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

In *Daubert*, the Court stated that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589.

The Plaintiff has three principal objections: (1) the Plaintiff claims

nearly all of the comparables[4] used by Stallard are dissimilar to the

subject properties; (2) the Plaintiff claims that there is no reliable basis

for Stallard's opinion, and that he did not use the proper formula; and

(3) the Plaintiff claims that Stallard's Report and Opinions make

assumptions on the highest and best use for the properties that are not

reasonably probable.  Each claim will be addressed in turn.[5]

### a. Comparables

As mentioned *above,* if a land sale is sufficiently similar with

respect to "locality, character, time, proximity, market conditions,

improvements, and modes of payment," then evidence of the sale can be

---

[4] Under Illinois law, the value of condemned land can be established by using sale values of comparable real property.  *See Dep't of Conservation v. Dorner,* 192 Ill. App. 3d 333, 338 (1st Dist. 1989).  The Court notes that the U.S. Court of Appeals for the Seventh Circuit has recommended using a linear regression model instead of comparables to calculate damages in pipeline condemnation cases.  *See Guardian Pipeline, L.L.C. v. 950.80 Acres of Land,* 525 F.3d 554, 558-59 (7th Cir. 2008) (Easterbrook, C.J.) (referencing Daniel L. Rubinfeld, *Reference Guide on Multiple Regression* in *Reference Manual on Scientific Evidence* 179-227 (Fed. Jud. Ctr. 2d ed. 2000)).  The methodology proposed by the Seventh Circuit appears to be substantially more accurate than the "comparables" method.  *See id.*  Unfortunately, discovery is now closed, the briefs have been filed, and the Court is compelled to proceed with the information on file.

[5] The Motions in Limine, the Responses, and supporting Memorandum for the four properties are virtually identical.  Therefore, the Court cites only to the documents related to one of the properties – the 80 acre Watts tract (IL-SA-203.001).

admitted.  *Dep't of Trans. v. Central Stone Co.*, 200 Ill. App. 3d 841, 845 (4th Dist. 1990).  "Land need not be identical for comparison, but it must be similar, meaning having a resemblance, and property may be similar for purposes of fruitful comparison, though each possesses various points of difference."  *Cent. Ill. Pub. Serv. Co. v. Gibbel*, 65 Ill. App. 3d 890, 894 (4th Dist. 1978) (Mills, J.).

Stallard used ten comparables in his appraisal.  *See* Appraisal [d/e 434-1], 11-13.  The Plaintiff claims that nine of the ten do not meet the standards detailed above.

### Sale Property 1

This property is located in rural Cotton Hill Township, and contains about 5.34 acres.  The property has a pipeline easement running through it.  Although significantly smaller than the subject properties, this seems like a proper comparable.  Therefore, the Court does not exclude Sale Property 1.

### Sale Property 2

This is a subdivided 5.09 acre lot in Glenarm, Illinois.  The Plaintiff

points out that Illinois courts have "consistently held that property which has been subdivided into lots is not similar to an unsubdivided or acreage property." *Gibbel*, Ill. App. 3d at 894 (citing *City of Chicago v. Pridmore*, 12 Ill. 2d 447 (1957)).

The Defendants try to distinguish Sale Property 2 from the tract in *Pridmore*. The Defendants explain that although Sale Property 2 is subdivided, it was subdivided by plat of survey (not plat of subdivision), and the subdivision did not involve a new street or easement of access. The Defendants "protesteth too much." As a subdivided lot, Sale Property 2 is not a proper comparable under *Gibbel*, and it is therefore excluded.

### Sale Property 3

This commercially-zoned property contains 0.75 acre, and it is located in a developed area on the Northwest side of Springfield. The property is a subdivided lot, and therefore is not a proper comparable under *Gibbel*. Putting aside the fact that the land is subdivided, the other characteristics of Sale Property 3 make it unlikely it will "be similar

for purposes of fruitful comparison" to any of the subject properties. *Gibbel*, 65 Ill. App. 3d at 894.  Therefore, Sale Property 3 is excluded.

Sale Property 4

This is a subdivided 3 acre lot, located outside Springfield, on Moore Road.  As indicated above, pursuant to *Gibbel*, subdivided plots are not properly comparable to acreage property.  Sale Property 4 is excluded.

Sale Property 5

Initially, this property seems like it would be comparable: it is agricultural land located outside of Springfield, and contains over 40 acres.  However, Stallard uses a sale price ($600,000) based upon a contract that was never fully completed.  Sale Property 5 was later sold at auction for $250,000.

The Defendants cite *Forest Preserve Dist. of Cook County v. Barchard*, for the proposition that a sale partially completed on time can be used as a comparable sale under Illinois law.  293 Ill. 556, 563 (1920). While noting the vintage of *Blanchard*, and the wide variance in prices,

the Court ultimately declines to exclude Sale Property 5.

Sale Property 6

This 1.38 acre property is located on South Sixth Street Frontage Road, in the Village of Southern View, Illinois.  The property is located in the middle of a commercial development.  At the time of sale, there was a motel building on the property.  After the sale, the building was demolished.

The Defendants emphasize that the subject properties are located near an Interstate 55 exit, like Sale Property 6.  The Defendants further state that the presence of the motel is irrelevant, because the property was sold for its land only.

In spite of the Defendants' arguments, Sale Property 6 does not seem similar in "locality, character, time, proximity, market conditions, improvements, and modes of payment" to the subject properties.  *See Central Stone Co.*, 200 Ill. App. 3d at 845.  Therefore, Sale Property 6 is excluded.

Sale Property 7

The Parties do not contest that Sale Property 7 is comparable to the subject properties. Accordingly, Sale Property 7 is not excluded.

Sale Property 8

This 1.20 acre property is located in the heart of Chatham, Illinois, in a commercial and residential area. Sale Property 8 is a subdivided, commercially zoned property. The Defendants respond that the key is whether the tract has been improved, not whether it is located within a municipality. The Defendants also try to analogize the subject properties to the location of Sale Property. Sale Property 8 is not comparable to the subject properties, and is excluded.

Sale Property 9

This property is a 4.5 acre, commercially-zoned, subdivided lot located in the City of Springfield. The property is located near the intersection of Old Jacksonville Road and Koke Mill Road, across from Koke Mill Medical Center. This property has almost nothing in common with the subject properties. Despite the Defendants' protestations otherwise, the properties are not comparable. Therefore, Sale Property 9

is excluded.

Sale Property 10

Sale Property 10 is a sudivided, commercially-zoned, 5 acre tract in Clearlake Township on Camp Butler Road.  The Defendants asserts that this is a rural agricultural property that was planted with beans during the growing season immediately before the sale.  Pursuant to *Gibbel*, the subdivided property is not a proper comparable.  Sale Property 10 is excluded.

Therefore, seven out of ten comparables are excluded.

b. *Reliability and Formula*

i. Reliability

The Plaintiff argues that the Report and opinions of Stallard are not reliable, after the exclusion of seven of ten comparables.  The Plaintiff has pointed to Stallard's deposition testimony, where he admits that his base data is derived from the ten comparables.  *See* Plaintiff's Memorandum in Support of Motion in Limine [d/e 434], 13-16.  Stallard testified that losing even a few of the comparables would alter the mean,

median, standard deviation, and range of values for the properties.  *See id.*

The Defendants have responded by speculating that perhaps Stallard was confused because he had been asked similar questions previously.  *See* Defendant's Memorandum in Opposition to Motion in Limine [d/e 452-1], 21.  The Court is not persuaded.

Furthermore, the Defendants argue that if some of the sale properties are excluded, "[i]t would potentially warrant a revision of the report to reflect excluded comparables."  *Id.*  However, discovery is closed.

It becomes apparent that with the majority of the comparables excluded, Stallard's Report and opinion are not reliable.  *See* Fed. R. Evid. 702.

### ii. Formula

The Plaintiff argues that the Stallard used the incorrect formula in calculating damages to the remainder of each subject property.  First, Stallard calculated the value of the entire property without the easement.

Second, Stallard calculated the value of the entire property with the easement.  Third, Stallard found the difference between the two values.

The parties disagree about the formula because each defines "remainder" differently.[6]  The Defendants have suggested that the surface land within the easement strip is a part of the remainder.  *See* Response [d/e 469-1], 23-24.

However, the Defendants are mistaken.  The Illinois Pattern Jury Instructions[7] shed light on what is included in the remainder.  The remainder is "the defendant's property outside the easement strip which defendant claims is damaged by the imposition of the easement."  Ill. Pattern Jury Instructions – Civil 300.86 cmt. (2006).

_____

[6] This arises, in part, because the principal Illinois cases usually involve the condemnation of land in fee simple.  *See, e.g., City of Springfield v. West Koke Mill Dev. Corp.*, 312 Ill. App. 3d 900, 904-905 (2000) (discussing the use of the before and after method in the condemnation of a strip of land for a turn lane).  In most cases the portion taken is clearly identifiable, and could be clearly marked on a map. The portion that was not taken is called the remainder.  The analysis is not terribly complicated.  The specific area of concern in this case is the area within the permanent easement.  The surface is used by the landowner while the pipeline owner has rights to have the pipeline under the surface.

[7] The Illinois Pattern Jury Instructions are not the law, and are generally entitled to little weight.  *See Welch v. United States*, 604 F.3d 408, 421 n. 15 (2010).  However, in this case they provide clarification to a how a term is to be understood under Illinois law.

Therefore, the remainder consists solely of that land outside of the easement strip.

The Defendants incorrectly claim that Stallard followed the formula set out in *City of Springfield v. West Koke Mill Dev. Corp.*, 312 Ill. App. 3d 900, 904-05 (2000).  The value of the remainder in the second step should not have included land within the easement strip.  This mistake occurred because of a misunderstanding regarding the term "remainder."

Therefore, the Court concludes that Stallard misapplied the formula in calculating damages to the remainder.  *See* Fed. R. Evid. 702.

### c. Highest and Best Use

Under Illinois law, a condemnee is to receive just compensation for the property at its highest and best use.  *See City of Chicago v. Anthony*, 136 Ill. 2d 169, 174 (1990).  The highest and best use may be either the present use, or a capacity for a future use would be anticipated with reasonable certainty.  *See id.* at 174-75; *see also United States v. Powelson*, 319 U.S. 266, 275-76 (1943) (without evidence of use change in the "reasonably near future," any damages for the future use would be

"too remote and speculative").

Under Illinois law, a property owner "is not restricted to showing the highest and best use allowed under present zoning regulations, but instead, may show a higher use under less restrictive zoning if there is a reasonable probability of rezoning." *Morton Grove Park Dist. v. Am. Nat. Bank & Trust Co.,* 39 Ill. App. 3d 426, 431 (1st Dist. 1976).

The Defendants contend that the highest and best use of the subject properties is commercial or residential. The Plaintiffs argue that using the subject properties for residential or commercial uses is not reasonably probable, and that, likewise, it is not reasonably probable that the properties will be rezoned.

After examining the documentation in the record, the Court agrees with the Plaintiff. The Defendants have demonstrated that it is possible that the agricultural area surrounding Glenarm, Illinois, could develop into a commercial and residential area.

However, the Defendants have not demonstrated that there is a reasonable probability that this will occur. A land use change is

reasonably probable when the change is perceived in the marketplace as being inevitable.  *See Crystal Lake Park Dist. v. Consumer's Co.*, 313 Ill. 395, 406 (1924) (claimed future use can be presented to the jury when that use "in fact enhanced the market value of the land in its present condition and state of improvement").  That does not appear to have occurred in this case.

The Defendant's argument that the highest and best use is commercial or residential is simply too speculative.  Therefore, the Court concludes that agriculture is the highest and best use of the four Sangamon County properties.

The Court concludes that Stallard's opinion and Report do not pass muster under Federal Rule of Evidence 702 and *Daubert*.

## B. Defendant's Motions in Limine

Defendants Robert and Bettie Burtle and Richard F. Watts have filed four Motions in Limine [d/e 457, 459, 461, and 463].  Each motion pertains to a separate tract of land, but all deal with the same issue – barring the reports and opinions of Plaintiff's experts Fred Coombe and

Dave Kiliman.  The Defendants are concerned with the experts discussing the rezoning of the four tracts of land.

The Defendants' Motions in Limine are denied as moot,[8] because the Plaintiff's Motion for Summary Judgment [d/e 466] will be granted.

## C. Plaintiff's Motion for Summary Judgment

The Plaintiff has moved for summary judgment against the Burtle and Watts Defendants, who own land in Sangamon County.[9]  *See* Motion for Summary Judgment [d/e 466].  The Plaintiff has incorporated by reference its Motions in Limine against these Defendants [d/e 432,

---

[8] The Court notes that the Defendants' Motions in Limine would have no effect upon the Court's decision regarding summary judgment.  Even if the claims involving the Burtle and Watts tracts went to trial, the Motions in Limine would most likely be granted in part only.  The Court recognizes that Kiliman and Coombe are rebuttal witnesses, and therefore it would be premature to grant the Motions before trial.  Furthermore, some of the alleged deficiencies in the testimony could be resolved via limiting instructions.  For example, the parties could agree on a stipulation of Kiliman's training without specifying his past employment with the Springfield-Sangamon County Regional Planning Commission, and Kiliman could be blocked from using the terms "us" or "we" when describing the way the Planning Commission makes determinations.  A limiting instruction could be given blocking testimony on future action taken by the Commission.  However, testimony regarding the Land Evaluation and Site Assessment (LESA) scoring could be allowed.  While the LESA score is considered in rezoning decisions, the scoring is conducted by professionals, and is not decided by a legislative body.

[9] The Court notes that the Plaintiff did not seek summary judgment against the Bruntjen property in Moultrie County (IL-MU-001.000).

435, 438, and 441].  *See* Motion for Summary Judgment [d/e 466], 27.

At the outset, the Court notes that there has been some confusion regarding terminology related to the condemnations.  The Parties dispute over the term "remainder" has been detailed above.  As indicated above, the Defendants have incorrectly interpreted the term "remainder."  *See* Ill. Pattern Jury Instructions – Civil 300.86 cmt. (2006).

## 1. Value of Interest Taken (Land Within the Easement Strip)

The Plaintiff correctly argues that as the condemnor, it has the burden of proving damage to the land within the easement strip.  *See Dep't of Public Works & Bldgs. v. Dixon*, 37 Ill. 2d 518, 520 (1967).

The Plaintiff has included the evidence from its expert witness, Mr. Reither.  *See* Motion for Summary Judgment [d/e 466], 11.  The Plaintiff's expert calculated the value of the land taken using the before and after method.  *See id.*  This is the method set out in Illinois law to determine the value of the interest taken.  *See West Koke Mill Dev. Corp.*, 312 Ill. App. 3d at 904.

In its Motion for Summary Judgment, the Plaintiff noted that the

33

Defendants had not objected to the Plaintiff's expert's calculations, and that they had not produced any evidence regarding just compensation for the interest taken.[10]  The Plaintiffs also noted that Stallard disclaimed any valuation of the easement strip.

The Defendants responded by providing competing values for the damages within the easement strip.  *See* Response [d/e 469-1], 5-8. However, it is unclear who performed these calculations.  They appear to be an extrapolation of Stallard's previous calculations, applied to the easement strip.

The Plaintiff asserts in its reply that the tables contained in the Response were not properly disclosed to the Plaintiff.  *See* Reply [d/e 470-1], 2-3.  The Plaintiff correctly argues that these calculations are not barred under Federal Rule of Civil Procedure 37(c)(1).  It is unclear who arrived at these figures, and they are not admissible under Federal Rule of Evidence 702.

---

[10] In fact, the Defendants acknowledge that regardless of the terminology and burdens, the before and after method should be used.  *See* Response [d/e 468-1], 23. The Plaintiff's expert used the before and after method.

Therefore, the only admissible evidence on damages for the interest taken (the easement strip) is that of the Plaintiff's expert, Mr. Reither.[11] Therefore, there is no genuine issue of material fact on this issue.

2. Damage to the Remainder

Under Illinois law, the Defendants bear the burden of proving that the condemnation of the easement strip has caused damage to the remainder of the property – that land outside the easement strip. *See Trunkline Gas Co. v. O'Bryan*, 21 Ill. 2d 95, 98 (1960) (citing *City of Chicago v. Provus*, 415 Ill. 618, 623 (1953)).

a. Expert Witness

As detailed above, the testimony of Doug Stallard is barred. Therefore, there is no expert testimony on damage to the remainder.

b. Other Witnesses

The Defendants have argued that, as landowners, they have a right

---

[11] Reither calculated damages within the easement strip as follows:
Burtle 40.69 acre tract (IL-SA-136.004) – $22,000;
Burtle 20.24 acre tract (IL-SA-202.001) – $17,950;
Watts 38.04 acre tract (IL-SA-202.002) – $19,000; and
Watts 80 acre tract (IL-SA-203.001) – $18,000.
Motion for Summary Judgment [d/e 466], 11.

to testify regarding the value of the land.  *See* Response [d/e 469-1], 8-16, 27.  The Defendants are correct that under Illinois law the landowner may testify as to value.  *See Merchant Bank v. Roberts*, 292 Ill. App. 3d 925, 931 (1997).  However, this is not an unqualified right.

In the depositions, the Defendants generally disclaimed any view of the value of the respective properties during depositions, instead stating that they would rely on Stallard's appraisal report.  *See* Excerpted Deposition Testimony in Motion for Summary Judgment [d/e 466], 12-14.

In response to the Plaintiff's argument on this point, the Defendants have stated that there were some valuations in the depositions, based upon passing remarks.  *See* Response [d/e 469-1], 12-16.  However, these statements were vague.  The most specific excerpt contained a statement from Robert Burtle saying that he would start valuing his 40 acre parcel at $20,000 per acre.  *Id.* at 12.

As the Plaintiff points out, pursuant to Federal Rule of Civil Procedure 26(e), the Defendants had a responsibility to correct or

supplement their disclosure in a timely fashion to the opposing party.

Now, after discovery has closed, the Defendants state the following:

> These lay opinions could be changed, more fully developed, and subject
> to timely disclosure to Plaintiffs be admitted at trial, subject only to
> issues relating to examination of credibility should such issues arise.
> Moreover, indicating that having no present opinion on the date of the
> deposition, does not mean that Defendants will not ever formulate one,
> nor that Defendants will not formulate a rebuttal opinion as to issues of
> valuation that they had no idea of what the issues were at the time that
> the Defendants['] depositions were taken.

Response [d/e 269-1], 27.  However, the time for timely disclosure has

run.

It runs counter to basic notions of fair play to allow a party to

reserve the right to develop an opinion on the matter either in trial or on

the eve of it.  It is especially troubling in this case, where the individuals

have specifically disclaimed any independent assessment of the value of

the tracts.  The purpose of depositions and the mandatory disclosure of

witnesses is to avoid trial by ambush.

Therefore, since there is no evidence to be presented regarding

damages to the remainder, no reasonable jury could find damages to the

remainder.

## III. CONCLUSION

*Ergo,* the Plaintiff's Motions in Limine [d/e 432, 435, 438, 441, and 454] are ALLOWED.

The Plaintiff's Motion for Summary Judgment [d/e 466] is ALLOWED.

Judgment is hereby entered against Rockies Express Pipeline, LLC, and in favor of:

- Defendants 40.69 acres more or less located in Sangamon County, Illinois (IL-SA-136.004), Robert J. Burtle, and Bettie L. Burtle in the amount of $22,000;

- Defendants 20.24 acres more or less located in Sangamon County, Illinois (IL-SA-202.001), Robert J. Burtle, and Bettie L. Burtle in the amount of $17,950;

- Defendants 38.04 acres more or less located in Sangamon County, Illinois (IL-SA-202.002), and Richard F. Watts, Trustee of Watts Family Trust, dated October 4, 2006, in the amount of $19,000; and

- Defendants 80 acres more or less located in Sangamon County, Illinois (IL-SA-203.001), and Richard F. Watts, Trustee of Watts Family Trust, dated October 4, 2006, in the amount of $18,000.

Defendants 40.69 acres more or less located in Sangamon County, Illinois (IL-SA-136.004); Robert J. Burtle; Bettie L. Burtle; 20.24 acres

more or less located in Sangamon County, Illinois (IL-SA-202.001);

38.04 acres more or less located in Sangamon County, Illinois  (IL-SA-202.002); Richard F. Watts, Trustee of Watts Family Trust, dated October 4, 2006; and 80 acres more or less located in Sangamon County, Illinois (IL-SA-203.001), are hereby terminated from the case.

The Defendants' Motions in Limine [d/e 457, 459, 461, and 463] are hereby DENIED AS MOOT.

As to Plaintiff Rockies Express Pipeline and the Bruntjen Defendants, the Final Pretrial Conference scheduled for August 23, 2010, remains in effect.

IT IS SO ORDERED.

ENTER: August 3, 2010

FOR THE COURT:                           s/Richard Mills
                                         United States District Judge